IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KARRY WHITTEN,<br><br>Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SERVICES, INC., TRANSUNION, LLC, and EQUIFAX INFORMATION SERVICES, INC.,<br><br>Defendants. | **8:25CV491**<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND, PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT** |

Plaintiff Karry Whitten brought this action against the defendant credit reporting agencies Experian Information Services, Inc. (Experian), Equifax Information Services, Inc. (Equifax), and Transunion, LLC (Transunion) (collectively CRAs). Filing 1. Two motions are before the Court. The CRAs filed a Joint Motion for Judgment on the Pleadings on March 4, 2026. Filing 31. On March 25, 2026, Whitten filed *inter alia* a Motion for Leave to File First Amended Complaint. Filing 37. For the reasons below, the Court denies Plaintiff's Motion for Leave to Amend and grants Defendants' Motion for Judgment on the Pleadings.

## I.   INTRODUCTION

The Court presents the allegations in the Proposed First Amended Complaint (Proposed Amended Complaint), Filing 37-2, that is the subject of Whitten's Motion for Leave to Amend prior to addressing Defendants' Joint Motion for Judgment on the Pleadings. This course is appropriate because if the Court grants the Motion for Leave to Amend, the Proposed Amended Complaint would supersede the Complaint and render Defendants' pending motion moot. *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal

1

effect." (citing *Washer v. Bullitt Cnty.*, 110 U.S. 558, 562 (1884))). This course is all the more appropriate because the Proposed Amended Complaint is the principal basis for Whitten's opposition to the Motion for Judgment on the Pleadings. Whitten asserts in a Consolidated Brief, "Plaintiff simultaneously moves for leave to file a First Amended Complaint ('FAC') that cures every alleged deficiency (to the extent there were any), reframes claims around factual inaccuracies in the CRA Defendants' own data, and incorporates newly discovered evidence. . . ." Filing 38 at 1. However, Defendants challenge Whitten's Motion for Leave to Amend on the basis of futility. Filing 46 at 2.

The Court therefore considers the following allegations from the Proposed Amended Complaint as true to the extent that they are nonconclusory. *See Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th 2021) (saying that in assessing a motion for judgment on the pleadings, the complaint is construed in favor of non-moving party and that the court assumes well-pleaded facts as true but does "not accept legal conclusions phrased as fact allegations"). The Court also considers "materials 'necessarily embraced by the pleadings,' including exhibits attached to the complaint and matters of public record." *Id.* at 760–61 (quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)).

### A. Factual Background

The Proposed Amended Complaint alleges that Whitten held three relevant American Express accounts. Filing 37-2 at 4–5. The Proposed Amended Complaint identifies each account by its last four digits. Filing 37-2 at 4–5. The first relevant account (*i.e.*, the business account)—identified as Account 4493—was a "business account opened in the name of [Plaintiff's dental business,] Whitten Dentistry, P.C." Filing 37-2 at 4 (¶ 10), 6 (¶ 15). As explained further below, American Express allegedly "granted a CARES Act accommodation [for the business account] in

June 2020," but nonetheless "[r]eported [the account] as 'charged off.'" *See* Filing 37-2 at 4 (¶ 10). The second relevant account, Account 3873, was involved in litigation that "resulted in a court-filed Stipulation and Agreement for Confession of Judgment."[1] Filing 37-2 at 4 (¶ 10). American Express also "reported [this second account] as 'charged off.'" *See* Filing 37-2 at 4 (¶ 10). The final account—identified as Account 8203—was also allegedly reported as "charged off" by American Express. Filing 37-2 at 4–5 (¶ 10).

### 1.  *American Express's Alleged Inaccurate Reporting*

Whitten alleges that American Express inaccurately reported credit information on all three accounts. Filing 37-2 at 8 (¶ 20). Whitten alleges that she reached "a CARES Act accommodation [in June 2020] on Account *4493 [(*i.e.*, the business account)] . . . under which American Express agreed to defer Plaintiff's June 2020 payment, accept payments of $1,703 per month for a period of 12 months at zero percent interest, and delay commencement of payments until August 2020." Filing 37-2 at 5–6 (¶ 13). Whitten avers that "Section 4021 [of the CARES Act] amended the [Fair Credit Reporting Act (FCRA)] by adding 15 U.S.C. § 1681s-2(a)(1)(F), which requires furnishers who grant accommodations to consumers affected by COVID-19 to report the account 'as current' or in its pre-accommodation status if the consumer is making payments pursuant to the accommodation." Filing 37-2 at 5. Whitten alleges that "[d]espite [the] accommodation, American Express immediately began reporting Account *4493 [(*i.e.,* the business account)] as delinquent and ultimately as 'charged off.'" Filing 37-2 at 6 (¶ 14). In response, "Plaintiff's representative [allegedly] contacted American Express on August 13, 2020 to dispute the derogatory reporting and invoke the CARES Act." Filing 37-2 at 6 (¶ 14). However, "an American Express

---

[1] This account is also referred to as the *1005 Account. Filing 37-2 at 4 (¶ 10) (calling the account "the '91005 Account'"); Filing 37-5 (referencing the "*1005" account).

representative [allegedly] stated: 'INFORMED WE CNNOT [sic] DO THAT." Filing 37-2 at 6 (¶ 14). The Proposed Amended Complaint maintains that "[o]n August 24, 2020, American Express closed Plaintiff's CARES Act complaint as 'NON AMEX ERROR.'" Filing 37-2 at 6 (¶ 14). Whitten alleges that American Express also inaccurately reported credit information relating to the business account because it was "a business account opened in the name of Whitten Dentistry, P.C." but was "reported on Plaintiff's personal consumer file." Filing 37-2 at 1–2 (¶ 2).

Whitten also alleges that American Express inaccurately reported credit information relating to Account 3873. According to the Proposed Amended Complaint, "[o]n December 8, 2022, a Stipulation for Confession of Judgment [(Stipulation)] was filed in Douglas County, Nebraska, Case No. CI 21 14713." Filing 37-2 at 4 (¶ 10) (saying "[l]itigation on [Account 3873 (*i.e.*, the *1005 Account)] resulted in a court-filed Stipulation and Agreement for Confession of Judgment"), 6 (¶ 16); Filing 37-5 (Stipulation and Agreement for Confession of Judgment). The Stipulation established a payment schedule for this account.[2] Filing 37-5 at 2 (saying the payment schedule is for Account Number *1005). Whitten allegedly "made payments pursuant to this agreement." Filing 37-2 at 6–7 (¶ 16). Nonetheless, American Express reported the account as "charged off." Filing 37-2 at 7 (¶ 17).

---

[2] Whitten avers that the Stipulation provided that "the total amount owed to American Express in total was $28,104.62 in principal and $148.00 in interest across all accounts." Filing 37-2 at 4 (¶ 10). This allegation is contradicted by the record and will not be taken as true by the Court. *See Halhouli v. United States Dep't of State,* 8:25cv223, 2025 WL 2322393, at *4 (D. Neb. Aug. 12, 2025). This is so because the Stipulation was the result of litigation on Account 3873 (*i.e.*, Account *1005), makes no mention that it covers Whitten's other accounts, and expressly establishes a payment schedule for Account Number *1005. Filing 37-2 at 4 (¶ 10) (saying "[l]itigation on [Account 3873 (*i.e.*, Account *1005)] resulted in a court-filed Stipulation"); Filing 37-5 at 1–2 (showing that the payment schedule was for Account Number *1005 and not mentioning that the Stipulation covers the other two accounts); Filing 37-3 at 4 (¶ 8) (saying "American Express National Bank agreed to accept monthly payments of $1,171.00 [per the Stipulation] from Ms. Whitten on Account Number ****1005, commencing January 15, 2022, for a total of 25 payments").

Whitten alleges that American Express also inaccurately reported credit information relating to the final account, Account 8203. Filing 37-2 at 8 (¶ 20). The only plausible allegation Whitten makes with respect to Account 8203 is that American Express reported the account as "charged off."[3] Filing 37-2 at 4–5 (¶ 10).

### 2. Defendants' Reinvestigations into American Express's Allegedly Inaccurate Reporting

The Court prefaces the following factual allegations relating to the CRAs' reinvestigations by noting that the Proposed Amended Complaint conflates the CRAs frequently and fails to distinguish between their allegedly deficient reinvestigations. *See, e.g.*, Filing 37-2 at 9 (¶ 24) (saying "[t]he CRA Defendants' systems automatically accepted each response without any independent analysis" when making allegations relating only to Equifax's reinvestigations). The Court will distinguish between the CRAs where possible.

"On August 11, 2023, Green Credit LLC, on behalf of [Whitten], [allegedly] sent a detailed written dispute to each CRA Defendant pursuant to 15 U.S.C. § 1681i(a)(2), disputing the [allegedly] inaccurate credit information being reported by American Express on all three accounts." Filing 37-2 at 8. The Proposed Amended Complaint also alleges that Plaintiff provided supporting documentation that included *inter alia* information regarding the CARES Act accommodation. Filing 37-2 at 8 (¶ 20).

The Proposed Amended Complaint alleges that each CRA failed to reasonably reinvestigate the inaccuracies that American Express allegedly reported. Filing 37-2 at 8. Whitten

---

[3] As noted above, Whitten alleges that the Stipulation covered the amount owed to American Express in Account 8203. Filing 37-2 at 4 (¶ 10). However, as the Court noted above, this allegation is blatantly contradicted by the record, as the Stipulation was the result of litigation relating to Account 3873 (*i.e.*, the *1005 Account) and established a payment schedule for the amount owed in Account 3873. Filing 37-2 at 4 (¶ 10); Filing 37-5 at 1–2. Therefore, the Court does not take this allegation as true. *See Halhouli*, 2025 WL 2322393, at *4.

first raises Equifax's alleged failures. Filing 37-2 at 8 (¶ 21). Whitten alleges that on August 21, 2023, "[u]pon receipt of [Whitten's] dispute," Equifax created three Automated Consumer Dispute Verifications (ACDVs). Filing 37-2 at 8 (¶ 21). The three ACDVs used "a single generic dispute code," stating "[053] CONSUMER STATES INACCURATE INFORMATION. PROVIDE OR CONFIRM COMPLETE ID AND VERIFY ALL ACCOUNT INFORMATION." Filing 37-2 at 8 (¶ 21). According to the Proposed Amended Complaint, the generic code "told the furnisher to 'verify all account information'" but "it said nothing about a CARES Act accommodation, a payment agreement, or a court-filed stipulation." Filing 37-2 at 8 (¶ 21). The Proposed Amended Complaint also states that "[a]lthough each [Equifax] ACDV states 'FCRA Relevant Information: IMAGE ATTACHED,' the Equifax production records show 'No Images Sent.'" Filing 37-2 at 9 (¶ 23); Filing 37-3 at 6 (saying that no images were attached).

On August 22, 2023, Narendra Mandola, an alleged American Express processor, entered a "Response Code" on Account 4493's (*i.e.*, the business account's) ACDV. Filing 37-3 at 6. The response code stated, "Cons Dispute not specific. Cons Info Verified. Acct Info Updtd." Filing 37-3 at 6. That same day, another American Express processor, Saurabh Saurabh, responded with respect to Account 3873 (*i.e.*, the account subject to the Stipulation), inputting a Response Code stating, "Disputed Info accurate. Updtd Acct info unrelated to dispute." Filing 37-3 at 8. Also on August 22, 2023, American Express processor Amit Chhetry entered a Response Code for the final account, Account 8203, stating, "Cons Dispute not specific. Cons Info Verified. Acct Info Updtd." Filing 37-3 at 10.

According to the Proposed Amended Complaint, Equifax's "systems automatically accepted each response without any independent analysis." Filing 37-2 at 9 (¶ 24). The Proposed Amended Complaint further alleges that "[t]he entire internal record of Equifax's 'investigation'"

6

contains a single notation stating, "999-NO ID SCAN." Filing 37-2 at 9–10 (¶ 25); Filing 37-3 at 12. According to the Proposed Amended Complaint, Equifax's internal record contains "no notes reflecting review of [Whitten's] documentation, analysis of the dispute's substance, comparison of the reported data to the court-filed Stipulation, or any human assessment whatsoever." Filing 37-2 at 9–10 (¶ 25); Filing 37-3 at 14. Nonetheless, Whitten received Equifax's reinvestigation results, which allegedly stated, "WE HAVE VERIFIED THAT THIS ITEM HAS BEEN REPORTED CORRECTLY. IF YOU HAVE DOCUMENTS THAT RELEASE YOU FROM THIS OBLIGATION, PLEASE FORWARD A COPY TO US." Filing 37-2 at 10 (¶ 26).

The Proposed Amended Complaint also alleges that Equifax's ACDV form "for Account *4493 shows that for 24 consecutive months (August 2021 through August 2023), the account reported: (a) zero payments received; (b) no 'Date of Last Payment'; (c) an 'Activity Designator' of 'Closed'; and (d) an 'Amount Past Due' that increased each month." Filing 37-2 at 7 (¶ 18) (citing the business account's ACDV forms). Whitten alleges the above "is internally inconsistent with an account on which the consumer is making payments pursuant to a structured agreement." Filing 37-2 at 7 (¶ 19).

The Proposed Amended Complaint's allegations of Experian's and Transunion's reinvestigation procedures are not as thorough. Concerning Transunion, the Proposed Amended Complaint alleges that "[o]n information and belief, Trans Union [sic] conducted a substantively identical automated process [to Equifax's process]." Filing 37-2 at 10 (¶ 27). With respect to Experian, the Proposed Amended Complaint avers that Experian "specifically flagged [Account 3873] as 'involved in litigation' (Dispute Code 040)" but nonetheless accepted American Express's verification of the charge-off and delinquency reporting as accurate. Filing 37-2 at 9 (¶ 22).

7

The Proposed Amended Complaint asserts that "the only communications between American Express and the CRA Defendants consist of" automated monthly mass data transfers for all cardmembers and coded ACDV forms. Filing 37-2 at 10–11 (¶ 28). The Proposed Amended Complaint also alleges that "American Express does not communicate with the CRAs by email or otherwise regarding any individual consumer, and does not maintain any standalone business record of what it reports about any individual cardmember." Filing 37-2 at 10–11 (¶ 28). According to the Proposed Amended Complaint, "[t]he CRA Defendants' 'reinvestigation' thus consists of one automated system transmitting a coded inquiry to another automated system, which transmits a coded response back. No human being at either end examines the substance of the consumer's dispute, reviews supporting documentation, or conducts any analysis."[4] Filing 37-2 at 11 (¶ 29).

## B. Procedural Background

Whitten filed her initial Complaint against the CRAs on August 6, 2025. Filing 1. Defendants filed a Joint Motion for Judgment on the Pleadings and a brief in support of the motion on March 4, 2026. Filing 31; Filing 32. Whitten filed her Motion for Leave to Amend and a consolidated brief in support of her motion and in opposition to Defendants' motion on March 25, 2026. Filing 37; Filing 38. Whitten also filed an Index of Evidence, the Proposed Amended Complaint, a declaration, selected pages of Equifax's ACDVs, and the Stipulation relating to Account 3873 (*i.e.*, Account *1005) that same day. Filing 37-1 through Filing 37-5.

---

[4] The Proposed Amended Complaint does not explain how this allegation (*i.e.*, "No human being at either end examines the substance of the consumer's dispute, reviews supporting documentation, or conducts any analysis") can be reconciled with the American Express processors entering response codes purporting to verify the accounts as reported. *Compare* Filing 37-2 at 11 (¶ 29) *with* Filing 37-2 at 9 (¶ 24) (explaining that three different American Express processors (*i.e.*, Narendra Mandola, Saurabh Saurabh, and Amit Chhetry) each returned a coded verification response); Filing 37-3 at 6 (showing that Mandola returned a response code of "Cons Dispute not specific. Cons Info Verified. Acct Info Updtd" for Account *4493), 8 (showing Saurabh returned a response code as "Disputed Info accurate. Updtd Acct info unrelated to dispute" for Account *3873), 10 (showing Chhetry returned a response code of "Cons Dispute not specific. Cons Info Verified. Acct Info Updtd" for Account *8203).

The initial Complaint asserts two causes of action. Count I alleges a violation of the Fair Credit Reporting Act (FCRA). Filing 1 at 7. Count II appears to allege a violation of the Nebraska Uniform Deceptive Trade Practices Act. Filing 1 at 8–9. In contrast, the Proposed Amended Complaint raises three causes of action. Count I of the Proposed Amended Complaint is titled "Violation of 15 U.S.C. § 1681e(b); Failure to Follow Reasonable Procedures." Filing 37-2 at 13. Count II is titled "Violation of 15 U.S.C. § 1681i(a); Failure to Conduct Reasonable Reinvestigation." Filing 37-2 at 14. Count III of the Proposed Amended Complaint is titled "Violation of 15 U.S.C. § 1681i(a)(6); Failure to Provide Notice of Dispute Results." Filing 37-2 at 15.

On April 8, 2026, Defendants filed a reply brief in support of their Joint Motion. Filing 46. On April 19, 2026, Whitten filed a Motion for Leave to File Surreply and various other documents. Filing 47; Filing 47-1; Filing 47-2; Filing 47-3. United States Magistrate Judge Michael D. Nelson granted Whitten's motion on April 20, 2026, giving "leave to file [Whitten's] proposed Surreply Brief," and noting, "The Court will consider it to the extent appropriate." Filing 48 (text order). On April 21, 2026, Whitten filed her surreply brief. Filing 49.

## II.  LEGAL ANALYSIS

### A.  Whitten's Proposed Amended Complaint is Futile

#### 1.  *Rule 15 "Futility" Standards for Amendments*

Motions for leave to amend are denied on the basis of futility when the proposed amended complaint cannot withstand a motion for judgment on the pleadings. *Ehlers v. Abiomed, Inc.*, 792 F. Supp. 3d 941, 964 (E.D. Mo. July 21, 2025) (saying "[the plaintiff's] proposed amended complaint could not survive a renewed motion for judgment on the pleadings" and denying the plaintiff's motion for leave to amend); *see Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th

Cir. 2018) (saying motions to amend are denied on a basis of futility when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure" (internal quotation marks omitted) (quoting *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008))); *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th 2021) (explaining that the Eighth Circuit's "standard [for] reviewing a Rule 12(c) judgment on the pleadings is the same as a Rule 12(b)(6) dismissal"). To survive a motion for judgment on the pleadings, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### 2. Whitten Fails to Allege a Claim Under 15 U.S.C. § 1681e(b)

#### a. Section 1681e(b) Standards

Whitten's first cause of action alleges a violation of 15 U.S.C. § 1681e(b) on the ground that the defendant CRAs failed to follow reasonable procedures when preparing consumer reports. Filing 37-2 at 13. Another judge of this court has observed,

> The FCRA does not provide for comprehensive regulation of the consumer reporting industry. *Hauser v. Equifax*, 602 F.2d 811, 814 (8th Cir. 1979). Rather, it establishes the broad minimum standard of "reasonable procedures" and requires consumer reporting agencies to adopt procedures which meet that minimum standard. *Id.*; *see* 15 U.S.C. § 1681e(b). And consumer reporting agencies are not strictly liable for inaccuracies under the FCRA. *Hauser*, 602 F.2d at 814. A plaintiff must show negligent or willful failure to follow reasonable procedures to assure maximum possible accuracy. *Id.* at 814-15; *see* 15 U.S.C. § 1681e(b).

*McCarter v. FD Holdings, LLC*, 4:20-CV-3080, 2021 WL 1120998, at *3 (D. Neb. Mar. 24, 2021).

In order to plausibly allege a claim under section 1681e, "a plaintiff must allege (1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its

10

reports, (2) the report in question was, in fact, inaccurate, (3) the plaintiff suffered injury, and (4) the consumer reporting agency's failure caused the plaintiff's injury." *Id.* (citing *Wright*, 805 F.3d at 1239). "The threshold inquiry under § 1681e(b) is whether the consumer report was inaccurate" because, "[i]f the report was not inaccurate, the reasonableness of a reporting agency's procedures turn out not to matter." *Id.* (citing *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020)).

### b. The Parties' Arguments

Defendants argue in their initial brief that Whitten's section 1681e claim must be dismissed because "it is well established, both in this Circuit and others, that a plaintiff fails to state a claim as a matter of law under the FCRA where he raises a legal issue between the plaintiff and the data furnisher, rather than alleging a factual inaccuracy." Filing 32 at 4 (original emphasis omitted) (citing *Rydholm*, 44 F.4th 1105, 1109 (8th Cir. 2022); *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023)). Defendants also assert that "the Ninth Circuit noted that 'reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts." Filing 32 at 5 (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010)). According to Defendants, credit reporting agencies "are not tribunals" and "CRAs 'simply collect and report information furnished by others.'" Filing 32 at 6 (citing *Carvalho*, 629 F.3d at 892). Defendants assert that "[Whitten's] claims against the CRA Defendants are the type of collateral attacks that cases like *Carvalho* and other courts continue to reject throughout the country." Filing 32 at 6 (citing *Carvalho*, 629 F.3d at 892).

In response, Whitten argues,

> [T]he CARES Act is relevant because it defines what accurate reporting looks like. When the statute commands that an account subject to an accommodation "shall" be reported "as current," a report showing "charged off" is factually inaccurate under § 1681e(b)'s "maximum possible accuracy" standard. The CRAs cannot

11

disclaim responsibility by saying they relied on the furnisher when the furnisher's reporting facially contradicts a federal statute the CRAs are expected to know and apply.

Filing 38 at 12. Whitten also argues that Equifax's historical data shows that "for 24 consecutive months (August 2021 through August 2023)," the business account was reported as closed but nonetheless had a growing balance. Filing 38 at 4. According to Whitten, "[a] balance that grows on a 'closed' account . . . suggests either accruing interest on a debt the consumer is paying (in which case the 'Date of Last Payment' field should reflect payments) or a reporting error." Filing 38 at 4.

In reply, Defendants assert that "Plaintiff would have the CRA Defendants 'know and apply' a law, something the Eighth Circuit has expressly said they are not required to do. The only fact the CRA Defendants are required to know is that Plaintiff did not pay. Whether Plaintiff was legally obligated under the CARES Act to pay is only a legal inaccuracy, and outside the scope of the FCRA." Filing 46 at 3. Additionally, Defendants argue that "it is well established that a closed account can still accrue debt." Filing 46 at 3 (citing cases).

In her surreply, Whitten argues that "the [defendants'] interest-accrual theory does not explain the data in [Equifax's] own files" because Whitten made payments pursuant to the Stipulation and CARES Act accommodation. Filing 49 at 1–2. According to Whitten, "[i]f a consumer is making payments and a creditor is accepting them, the 'Date of Last Payment' field [for the historical data relating to August 2021 to August 2023] must reflect that activity. It did not." Filing 49 at 1–2; Filing 37-2 at 7 (¶ 18) (using historical data from August 2021 through August 2023).

c.    Whitten Fails to Allege a Cognizable Inaccuracy

As noted above, the CRA report must be cognizably inaccurate in order for a plaintiff to plausibly state a claim under section 1681e. *McCarter*, 2021 WL 1120998, at \*3 (citing *Erickson*, 981 F.3d at 1251). The Court understands Whitten to assert that the Equifax reports were inaccurate for four reasons. First, Whitten asserts that the Equifax reinvestigation report relating to the business account inaccurately verified the business account as "charged off" despite the business account being the subject of an alleged CARES Act accommodation. Filing 37-2 at 14 (¶ 37). However, "inaccuracies that turn on legal disputes are not cognizable under the FCRA." *Mader v. Experian Info Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023); *see Rydholm*, 44 F.4th at 1109 ("We join our sister circuits in rejecting the invitation to mandate that CRAs hire individuals with legal training to preemptively determine the validity of reported debts."). This allegedly inaccurate reporting turns on whether or not the CARES Act requires the business account to be reported consistent with its preaccommodation status. Filing 37-2 at 14 (¶ 37) (saying "[t]he CARES Act . . . defines what accurate reporting looks like for accounts subject to a COVID-19 accommodation"). Whitten maintains that Equifax failed to accurately report the status of the business account because it relied on American Express's reporting when such "reporting facially contradicts a federal statute the CRAs are expected to know and apply." Filing 38 at 12 ("The CRAs cannot disclaim responsibility by saying they relied on the furnisher when the furnisher's reporting facially contradicts a federal statute the CRAs are expected to know and apply."). Knowing and applying federal law is the sort of legal dispute that cannot underlie a cognizable inaccuracy. *Mader*, 56 F.4th at 270; *Carvalho*, 629 F.3d at 891 (saying "credit reporting agencies are not tribunals" and "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims") (collecting cases);

13

*see Rydholm*, 44 F.4th at 1109. Moreover, the legal dispute here is between American Express and Whitten.

The second alleged inaccuracy is Equifax's reliance on American Express's reporting of Whitten's business account on her personal consumer file. Filing 37-2 at 1–2 (¶ 2) ("The accounts included a business account opened in the name of Whitten Dentistry, P.C., which was reported on Plaintiff's personal consumer file. These are factual inaccuracies, not legal disputes, that the CRA Defendants could have identified through reasonable procedures and reasonable reinvestigation."). Again, however, it appears to the Court that Whitten is effectively asking the CRAs to receive the information from American Express and then determine whether such reporting is legally permissible and, therefore, accurate. *Mader*, 56 F.4th at 270 ("[I]naccuracies that turn on legal disputes are not cognizable under the FCRA."); *Carvalho*, 629 F.3d at 891 (saying CRAs "simply collect and report information furnished by others" and that courts have accordingly "been loath to allow consumers to mount collateral attacks on the legal validity of their debts"); *see Rydholm*, 44 F.4th at 1109. Moreover, Whitten has failed to plausibly allege that the account was improperly reported on her personal account in the first place because she is "the member" on the account, Filing 38 at 5, and a consumer report bears on "a consumer's credit worthiness, credit standing, credit capacity, character, [and] general reputation," among other things, 15 U.S.C. § 1681a. *See Saylor v. Pinnacle Credit Servs., LLC*, 118 F. Supp. 3d 881, 887 (E.D. Va. 2015) ("It is undisputed that Saylor became delinquent on an account that was opened in his name personally and on which he was personally responsible. For these reasons, his delinquency on that business account may be reasonably seen as having a 'bearing on an individual's credit worthiness' and was properly reported.").

14

Third, Whitten asserts that Equifax's own data "contained a facial inconsistency that should have triggered review under any reasonable procedure." Filing 37-2 at 7 (¶ 18). This "facial inconsistency," according to Whitten, was that Equifax's "historical data for Account *4493 [(*i.e.*, the business account)] shows that for 24 consecutive months (August 2021 through August 2023), the account reported: (a) zero payments received; (b) no 'Date of Last Payment'; (c) an 'Activity Designator' of 'Closed'; and (d) an 'Amount Past Due' that increased each month." Filing 37-2 at 7 (¶ 18). According to Whitten, "It is internally inconsistent with an account on which the consumer is making payments pursuant to a structured agreement. [Equifax's] 'reasonable procedures' under § 1681e(b) should have flagged this inconsistency in the data they already possessed, without reference to any external court document." Filing 37-2 at 7 (¶ 19).

The issue with this alleged inaccuracy is that Whitten's alleged inaccuracy appears to be based on the "historical data for Account *4493" (*i.e.*, the business account) being "inconsistent with an account on which the consumer is making payments pursuant to a structured agreement." Filing 37-2 at 7 (¶¶ 18–19). However, it appears that the structured agreement that Whitten refers to is the Stipulation, which applies to Account 3873 (*i.e.*, Account *1005), not the business account.[5] Filing 37-2 at 6 (¶ 16) (saying "[t]he Stipulation established a structured payment plan . . . on all accounts"), 7 (¶ 19).

---

[5] As explained above, Whitten avers that the Stipulation provided that "the total amount owed to American Express in total was $28,104.62 in principal and $148.00 in interest across all accounts." Filing 37-2 at 4 (¶ 10). This allegation is contradicted by the record and will not be taken as true by the Court. *See Halhouli*, 2025 WL 2322393, at *4. Filing 37-2 at 4 (¶ 10) (saying "[l]itigation on [Account 3873 (*i.e.*, Account *1005)] resulted in a court-filed Stipulation"); Filing 37-5 at 1–2 (showing that the payment schedule was for Account Number *1005 and not mentioning that the Stipulation covers the other two accounts); Filing 37-3 at 4 (¶ 8) (saying "American Express National Bank agreed to accept monthly payments of $1,171.00 [per the Stipulation] from Ms. Whitten on Account Number ****1005, commencing January 15, 2022, for a total of 25 payments").

Whitten also maintains that the reporting on the business account was inaccurate because Whitten made payments pursuant to a CARES Act accommodation. Filing 37-2 at 1–2; Filing 49 at 1–2. (¶ 2) ("Plaintiff was making payments pursuant to a court-filed Stipulation and Agreement for Confession of Judgment and a prior CARES Act accommodation."). However, Whitten never actually alleges that any payments were made for the time period (*i.e.*, August 2021 through August 2023) for which the business account allegedly reported: (a) zero payments received; (b) no 'Date of Last Payment'; (c) an 'Activity Designator' of 'Closed'; and (d) an 'Amount Past Due' that increased each month." Filing 37-2 at 7 (¶ 18). Payments pursuant to the CARES Act accommodation allegedly commenced August 2020. Filing 37-2 at 5 (¶ 13). Moreover, it is not clear to the Court that Whitten ever notified Equifax—or any CRA—that any payments were made to the business account. Filing 37-2 at 8 (¶ 20) (saying only that "information regarding the CARES Act accommodation" and the Stipulation were provided to the CRAs); *Edeh*, 974 F. Supp. 2d at 1236 ("[T]he CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher." (internal quotation marks omitted) (quoting *Gorman*, 584 F.3d at 1156)). Therefore, Whitten does not plausibly allege an inaccuracy based on a growing balance on the business account while relevant payments were accepted or while there was no "Date of Last Payment" entry.

Finally, and although unclear, Whitten appears to maintain that it was inaccurate for all three accounts to be reported as "charged off" while Whitten made payments pursuant to the Stipulation and that Equifax relied on this reporting. Filing 37-2 at 1–2 (¶ 2). As noted by the Court elsewhere, Whitten can only plausibly maintain that the Stipulation applied to Account 3873 (*i.e.*, Account *1005). Additionally, the Stipulation did not provide, and the Proposed Amended Complaint does not otherwise plausibly maintain, that Account 3873's (*i.e.*, Account *1005's)

16

"charged off" status would be changed while Whitten paid off the balance due according to the schedule. Filing 37-5.

Whitten spends more paragraphs in the Proposed Amended Complaint alleging that the CRAs' procedures were unreasonable because the coded ACDV exchanges were purportedly unreasonable. Filing 37-1 at 10 (unnumbered paragraph) (saying the machine-to-machine system is not an investigation); 10–11 (¶¶ 28–29) ("No human being at either end examines the substance of the consumer's dispute, reviews supporting documentation, or conducts any analysis. An industry-wide practice of noncompliance does not become 'reasonable' merely because every participant has adopted it."). What is important though is that Whitten fails to plausibly allege an inaccuracy, so the claim must be dismissed. *McCarter*, 2021 WL 1120998, at *3 (citing *Erickson, 981 F.3d at 1251*); *Buckley*, 9 F.4th at 760 (explaining that the Eighth Circuit's "standard [for] reviewing a Rule 12(c) judgment on the pleadings is the same as a Rule 12(b)(6) dismissal"). Furthermore, "[m]any courts have held that the practice of using ACDVs in the reinvestigation process is reasonable as a matter in law." *Edeh v. Equifax Info. Servs., LLC*, No. 11–CV–2671 (SRN/JSM), 2012 WL 4358646, at *3 (D. Min. Sept. 21, 2012) (citing *Garrett v. Experian Info. Sols., Inc.*, No. 11-12523, 2012 WL 1931324, at *6 (E.D. Mich. May 29, 2012) (collecting cases)). In short, the Proposed Amended Complaint's first claim is futile and will not be allowed. *Munro, 899 F.3d at 589* (saying motions to amend are denied on a basis of futility when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure" (internal quotation marks omitted) (quoting *Cornelia I. Crowell GST Tr.*, 519 F.3d at 782)).

3.    *Whitten Fails to Allege a Claim Under 15 U.S.C. § 1681i(a)(1)(A)*

a.   Section 1681i(a)(1)(A) Standards

Whitten alleges that the CRAs failed to conduct a reasonable reinvestigation under 15 U.S.C. § 1681i(a) for her second proposed claim. Filing 37-2 at 14. "Section 1681i(a)(1)(A) of the FCRA provides that, if a consumer disputes 'the completeness or accuracy of any item of information contained in [his] file' with the CRA, then 'the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. . . .'" *Desautel v. Experian Info. Sol., LLC*, Case No. 19-CV-2836 (PJS/LIB), 2020 WL 2215736, at *4 (D. Minn. May 7, 2020) (quoting 15 U.S.C. § 1681i(a)(1)(A)). As with section 1681e, the plaintiff must plausibly plead a cognizable inaccuracy in order to state a claim under section 1681i(a)(1)(A). *Id.* (citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991)); *Charles v. Lexisnexis*, Case No. 6:19-cv-6005, 2019 WL 1051192, at *2 (W.D. Ark. Mar. 5, 2019) ("The overwhelming weight of authority indicates that a plaintiff must allege that his credit report contains inaccurate information to state a claim under section 1681(i).") (collecting cases).

"[A] CRA conducts a reasonable reinvestigation by 'notify[ing] the furnisher of the disputed information of the substance of the dispute and provid[ing] it with all relevant information received from the customer.'" *Foster v. Exeter Fin. LLC*, Case No. 4:18 CV 1014 CDP, 2019 WL 5550542, at *4 (E.D. Mo. Oct. 28, 2019) (internal quotation marks omitted) (quoting *Edeh v. Equifax Info Servs. LLC*, 974 F. Supp. 2d 1220, 1236 (D. Minn. 2013), in turn quoting *Gorman v. Wolpoff v. Abramson, LLP*, 584 F.3d 1147, 1156–57 (9th Cir. 2009)). "[T]he CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher." *Edeh*, 974 F. Supp. 2d at 1236 (internal quotation marks omitted) (quoting *Gorman*, 584 F.3d at 1156).

18

b.   The Parties' Arguments

Defendants argue that Whitten's section 1681i claim must be dismissed "because Plaintiff never alleges that the disputed information was inaccurate, a requirement to state a claim under 15 U.S.C. § 1681i." Filing 32 at 6 (citing *Desautel v. Experian Info. Sol., LLC*, Case No. 19-CV-2836 (PJS/LIB), 2020 WL 2215736, at \*4 (D. Minn. May 7, 2020)).

In response, Whitten argues that the automated consumer dispute verification process used by the CRAs cannot form the basis for a reasonable reinvestigation under section 1681i(a). Filing 38 at 6–7. Whitten asserts *inter alia* that the CRAs did not convey the substance of Whitten's disputes to American Express when the ACDV forms were created as the code told American Express to verify all account information, but it said "nothing about a CARES Act accommodation, a payment agreement, or a court filed stipulation." Filing 38 at 7. Whitten also alleges that the ACDVs "failed to transmit Plaintiff's documentation." Filing 38 at 7. Elsewhere, Whitten avers that the CRAs failed to conduct a reasonable investigation because it was based on an automated exchange of coded ACDV forms. Filing 38 at 6, 8 (saying "[a] machine does not 'consider' anything. It processes data").

In reply, Defendants reiterate their argument that Whitten never plausibly alleges a cognizable inaccuracy. Filing 46 at 2–3.

Whitten reiterates in her surreply that the CRAs failed to reasonably reinvestigate because the reinvestigation was "entirely automated," as "it [was a] machine-to-machine exchange of coded forms" and involved "no human review of the substance of the dispute or the documentation Plaintiff submitted." Filing 49 at 5.

c.    Whitten Fails to Allege a Cognizable Inaccuracy

"The overwhelming weight of authority indicates that a plaintiff must allege that his credit report contains inaccurate information to state a claim under section 1681(i)." *Charles*, 2019 WL 1051192, at \*2; *Santos v. Experian Info. Sols, Inc.*, File No. 21-cv-117 (ECT/ECW), 2021 WL 4034801, at \*3 (D. Minn. Sept. 3, 2021) ("As with her § 1681e(b) claim, to maintain claims under §§ 1681i(a)(1)(A) and 1681i(a)(5)(A), Dr. Santos must plausibly allege that the disputed items of information contained in her file are inaccurate."). Whitten fails to allege a cognizable inaccuracy for the same reasons the Court explained in its § II.A.3 analysis. Whitten therefore fails to state a claim under section 1681i(a)(1)(A). *Buckley v*, 9 F.4th at 760 (explaining that the Eighth Circuit's "standard [for] reviewing a Rule 12(c) judgment on the pleadings is the same as a Rule 12(b)(6) dismissal").

Therefore, the second claim in the Proposed Amended Complaint is futile and will not be allowed. *Munro*, 899 F.3d at 589 (saying motions to amend are denied on a basis of futility when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure" (internal quotation marks omitted) (quoting *Cornelia I. Crowell GST Tr.*, 519 F.3d at 782)).

4.   *Whitten Fails to Allege a Claim Under 15 USC 1681i(a)(6)(A)*

a.    Section 1681i(a)(6)(A) Standards

Under section 1681i(a)(6)(A),

> A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

15 U.S.C. § 1681(a)(6)(A). The statute further provides that, among other things, the CRA must provide "a notice that, if requested by the consumer, a description of the procedure used to

20

determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available." 15 U.S.C. § 1681(a)(6)(A).

### b.   The Parties' Arguments

Because the CRAs' initial brief preceded the filing of Whitten's Motion for Leave to Amend and the Proposed Amended Complaint—in which Whitten's section 1681i(a)(6)(A) claim was raised for the first time—the CRAs did not present any arguments relating to the claim. Filing 1 (not raising the claim); Filing 37-2 (raising the claim); Filing 32 (Defendants' brief). The only mention made of the section 1681i(a)(6) claim in Whitten's brief states that it alleges "that the CRA Defendants' dispute results notices failed to describe the procedure used to determine accuracy, failed to disclose the consumer documentation was not forwarded, and failed to disclose the automated nature of the process." Filing 38 at 3. The CRAs do not raise any argument relating to Whitten's section 1681i(a)(6) claim in their reply brief, Filing 46, and Whitten does not raise an argument relating to the claim in her surreply, Filing 49. Nevertheless, to determine whether the Proposed Amended Complaint should be allowed, the Court must assess whether this claim is futile.

### c.   Whitten Does Not Plausibly Plead a Section 1681i(a)(6) Violation

The Proposed Amended Complaint states that "[s]ection 1681(a)(6) requires CRAs to provide written notice including 'a description of the procedure used to determine the accuracy and completeness of the information.'" Filing 37-2 at 16 (¶ 45). On that basis, the Proposed Amended Complaint asserts that Whitten is entitled to relief because "[t]he CRA Defendants' notices were confusing, incomplete, and internally inconsistent. They failed to disclose that no

supporting documentation was forwarded to the furnisher, failed to disclose the automated nature of the process, and told Plaintiff the information had been 'verified' when no meaningful verification occurred." Filing 37-2 at 16 (¶¶ 46–47).

Whitten misreads section 1681(a)(6). As mentioned above, Whitten alleges that "[s]ection 1681(a)(6) requires CRAs to provide written notice including 'a description of the procedure used to determine the accuracy and completeness of the information.'" Filing 37-2 at 16. However, section 1681(a)(6) instead requires the CRA to provide a "notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency." 15 U.S.C. § 1681i(a)(6)(B). Whitten nowhere alleges that she either did not receive the notice or that she requested "a description of the procedure used" by the CRA. Filing 37-2 at 16 (¶ 46) (saying that the CRAs provided notices but not saying any description was requested). It is inapposite that the CRAs' "notices were [allegedly] confusing, incomplete, and internally inconsistent," because the CRAs had no duty under section 1681i(a)(6)(B)(iii) at the time to provide Whitten with a description of the procedure the CRAs used. 15 U.S.C. § 1681i(a)(6)–(7) (saying "[a] consumer reporting agency shall provide to a consumer a description referred to in paragraph (6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description"). Whitten therefore fails to state a claim under section 1681i(a)(6). *Buckley v*, 9 F.4th at 760 (explaining that the Eighth Circuit's "standard [for] reviewing a Rule 12(c) judgment on the pleadings is the same as a Rule 12(b)(6) dismissal").

   5.   *Whitten Does Not Plausibly Allege Any Proposed Claims and The Proposed Amended Complaint is Therefore Futile*

The Proposed Amended Complaint is futile because it fails to plead any plausible claims to relief. *Id.* (explaining that the Eighth Circuit's "standard [for] reviewing a Rule 12(c) judgment on the pleadings is the same as a Rule 12(b)(6) dismissal"); *Ashcroft*, 556 U.S. at 678 (saying the

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss) (quoting *Twombly*, 550 U.S. at 570)); *Munro*, 899 F.3d at 589 (saying motions to amend are denied on a basis of futility when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure" (quoting *Cornelia I. Crowell GST Tr.*, 519 F.3d at 782). The Proposed Amended Complaint fails to state any plausible claims to relief for the foregoing reasons and is therefore futile. *Munro*, 899 F.3d at 589. The Motion for Leave to Amend is denied. *Munro*, 899 F.3d at 589.

### B.  The Initial Complaint Fails to State Any Plausible Claims

Whitten's Motion for Leave to Amend is denied, so the Court turns its attention to the remaining motion—Defendants' Motion for Judgement on the Pleadings on the initial Complaint. Filing 31. That initial Complaint alleges two causes of action. Count I alleges a violation of the Fair Credit Reporting Act (FCRA). Filing 1 at 7. Count II appears to allege a violation of the Nebraska Uniform Deceptive Trade Practices Act. Filing 1 at 8–9. The Court will consider whether the initial Complaint states viable claims, notwithstanding that Whitten appears to have abandoned that pleading by offering her Proposed Amended Complaint.

### 1.  *The Initial Complaint Fails to Allege a Violation of the Fair Credit Reporting Act*

Whitten's claim does not clearly assert what section(s) of the FRCA the claim rests on because the cause of action merely alleges a "violation of the Fair Credit Reporting Act" without specifying any provisions. Filing 1 at 7. To the extent Whitten alleged claims under sections 1681e(b), 1681i(a)(1), and 1681i(a)(6)—the claims considered in § II of this order—those claims must be dismissed because the Complaint provides no factual material different from the Proposed

23

Amended Complaint that would change the Court's analysis on the plausibility of the claims. *Compare* Filing 1 *with* Filing 37-2.

Whitten notes in her Motion for Leave to Amend that the initial Complaint's FCRA claim was based on section 1681s-2(b). Filing 37 at 2 ("The [Proposed Amended Complaint] drops the § 1681s-2(b) furnisher-duty claim. . ."). As Whitten acknowledges in her Motion for Leave to Amend, section 1681s-2 imposes duties on "furnishers of information" (*e.g.,* American Express), not CRAs (*e.g.*, Equifax). Filing 37 at 2. Because section 1681s-2 does not create a private right of action against CRAs, the claim against the CRA defendants must be dismissed as a matter of law. 15 U.S.C. § 1681s-2(b). Whitten does not appear to allege any other bases for her original FCRA claim, and the Court therefore finds that Whitten fails to state a claim upon which relief can be granted in Count I of the initial Complaint. *Buckley*, 9 F.4th at 760 (explaining that the Eighth Circuit's "standard [for] reviewing a Rule 12(c) judgment on the pleadings is the same as a Rule 12(b)(6) dismissal"); *see generally* Filing 1.

2.   *The Complaint Fails to Allege a State Law Claim*

The initial Complaint alleges that the CRAs' "actions and omissions [described in the initial Complaint] are deceptive trade practices under the Nebraska Deceptive Trade Practices [A]ct." Filing 1 at 8 (¶ 50). Thus, while the Complaint styles the claim under the "Nebraska Unfair Business Practices Act," the Court understands the claim to arise from the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. § 87-301 *et seq.*, as the "Nebraska Unfair Business Practices Act" does not exist.

Whitten alleges that "Defendants' acts as to Whitten described [in the initial Complaint] are a 'scheme or device' to 'defraud by means of obtaining money or property by knowingly false or fraudulent pretenses' in that each Defendant made the decision to categorize Whitten's dispute

as frivolous and irrelevant rather than to comply with its obligations to conduct a reasonable investigation." Filing 1 at 8 (¶ 51) (citing Neb. Rev. Stat. § 87-302). Whitten's allegation is conclusory and will not be taken as true by the Court. *See Buckley*, 9 F.4th at 760 (saying that in assessing a motion for judgment on the pleadings, the complaint is construed in favor of non-moving party and that the court assumes well-pleaded facts as true but does "not accept legal conclusions phrased as fact allegations"). The allegation is conclusory because, among other reasons, Whitten never plausibly alleges that each CRA "made the decision to categorize Whitten's dispute as frivolous and irrelevant." *See generally* Filing 1. Whitten's allegation also fails because the defendant CRAs have no duty to investigate. *Compare* 15 U.S.C. § 1681i(a) (imposing a duty to conduct reinvestigations on CRAs) *with* 15 U.S.C. § 1681s-2(b) (imposing a duty to investigate on furnishers of information); *see also Paul v. Experian Info. Sols. Inc.*, 793 F. Supp. 2d 1098, 1103 (D. Minn. 2011); Filing 1 at 5 (¶ 31) (saying "the Defendants were required to conduct a reasonable investigation into this specific account pursuant to 15 U.SC. [sic] § 1681- 2(b)(1)(A) [sic]").

Whitten also alleges that "Defendants' acts and omissions described above are a deceptive trade practice because such acts and omissions are an 'unconscionable act or practice by a supplier' by them as suppliers of credit information in that a third party would expect, in reviewing such information, that any disputes submitted by consumers were investigated and that any materials submitted with a credit dispute would be shared with the creditor (here American Express)." Filing 1 at 8–9 (¶ 52). Under Neb. Rev. Stat. § 87-303.01, "[a]n unconscionable act or practice by a supplier in connection with a consumer transaction shall be a violation of the Uniform Deceptive Trade Practices Act." Neb. Rev. Stat. § 87-303.01. "The unconscionability of an act or practice shall be a question of law for the court." Neb. Rev. Stat. 87-303.01.

The Court finds that Whitten has not plausibly pleaded any unconscionable acts committed by the CRAs. First, Whitten's claim seems to be based on the CRAs not reasonably investigating the dispute pursuant to section 1681s-2(b)(1)(A). Filing 1 at 5 (¶¶ 31–32). As explained above, however, Whitten cannot plausibly plead that the CRAs have any such duty. *Edeh*, 974 F. Supp. 2d at 1236 (internal quotation marks omitted) ("[T]he CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher." (quoting *Gorman*, 584 F.3d at 1156)). Second, Whitten has not plausibly alleged any conduct that led to a cognizable inaccuracy. *See generally* Filing 1; *Aramjoo v. Sallie Mae Inc.*, No. 4:11-cv-00077-DGK, 2011 WL 3568903, at *2 (W.D. Mo. Aug. 12, 2011) ("Plausibility, not probability, is the touchstone of the *Twombly* standard."). Finally, the claim seems to rest on allegations like "[e]ach Defendant's negative reporting was willful in that they knew they did not intend to conduct an actual investigation that would have shown Plaintiff's reported information to be incorrect and they intentionally did not share any documentation provided to them with American Express." Filing 1 at 6 (¶ 41). Such allegations, as explained elsewhere, are conclusory. *See Buckley*, 9 F.4th at 760.

Thus, Defendants are entitled to Judgment on the Pleadings on the initial Complaint.

### III. CONCLUSION

As noted above, Whitten's Motion for Leave to Amend is futile. The Court therefore denies the motion. *Munro*, 899 F.3d at 589 (saying motions to amend are denied on a basis of futility when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure" (quoting *Cornelia I. Crowell GST Tr.*, 519 F.3d at 782)); *Buckley*, 9 F.4th at 760 (explaining that the Eighth Circuit's "standard [for] reviewing a Rule 12(c) judgment on the pleadings is the same as a Rule 12(b)(6) dismissal"). Whitten's initial Complaint

similarly fails to state a plausible claim to relief. Defendants are entitled to Judgment on the Pleadings on the initial Complaint. *Buckley*, 9 F.4th at 760.

Upon the foregoing,

IT IS ORDERED:

1. Whitten's Motion for Leave to Amend, Filing 37, is denied;

2. Defendants' Motion for Judgment on the Pleadings, Filing 31, is granted; and

3. A Judgment will follow.

Dated this 15th day of July, 2026.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge